COURT OF APPEALS OF VIRGINIA


Present: Judges Humphreys, Clements and Senior Judge Coleman
Argued at Richmond, Virginia


HENRICO COUNTY SCHOOL BOARD

                                              OPINION BY
v.    Record No. 1317-00-2        JUDGE JEAN HARRISON CLEMENTS
                                            SEPTEMBER 25, 2001
CATHY MAE B. ETTER


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Ralph L. Whitt, Jr. (Michael P. Del Bueno;
            Williams, Lynch & Whitt, P.C., on brief), for
            appellant.

            B. Mayes Marks, Jr. (Marks and Williams,
            P.C., on brief), for appellee.


    Henrico County School Board (employer) appeals an award by

the Workers' Compensation Commission (commission) of temporary

total disability benefits to Cathy Mae Etter (claimant) upon her

change-in-condition application. Employer contends the award is

unsupported by the evidence.[1] Finding no error by the

commission, we affirm the award.

    To prevail on her change in condition application, claimant

had to prove by a preponderance of the evidence that she suffered

an incapacity to work that was causally related to the October 11,

1996 compensable injury she suffered while working for employer.

See King's Market v. Porter, 227 Va. 478, 483, 317 S.E.2d 146, 148

_____

    [1] For purposes of this appeal, we have consolidated
employer's four interrelated questions presented.

(1984); Rosello v. K-Mart Corp., 15 Va. App. 333, 335, 423 S.E.2d 214, 216 (1992).  In reviewing the commission's decision, we view the evidence in the light most favorable to claimant, the party prevailing before the commission.  See Allen & Rocks, Inc. v. Briggs, 28 Va. App. 662, 672, 508 S.E.2d 335, 340 (1998).

So viewed, the evidence established that claimant, who had previously undergone surgery on her right knee in March 1995, suffered a compensable injury to her right knee on October 11, 1996, while driving a school bus for employer.  Dr. Frederick S. Fogelson operated on her knee in November 1996, and claimant returned to work on December 2, 1996.  Pursuant to an award of the commission, employer paid claimant temporary total disability benefits for the period October 11, 1996 through December 1, 1996.

Claimant continued to work as a school bus driver until she moved to Chesterfield County in January 1997.  There, she worked approximately once a week as a house cleaner and provided childcare for at most two children during the summers.  The problems with her right knee, claimant testified, never went away after the November 1996 surgery.  She continued to experience ongoing pain.  She saw Dr. Fogelson on March 6, 1997, complaining of pain and buckling in her knee after going up and down the steps in her home.  She received additional medical treatment for her knee in June 1997 and October 1997, respectively.

Following Dr. Fogelson's retirement, claimant came under the care of Dr. William E. Nordt, III.  On July 29, 1998, Dr. Nordt

- 2 -

examined claimant, who complained of persistent knee pain, and diagnosed her with early degenerative disease of the right knee. On August 18, 1998, Dr. Nordt performed arthroscopic surgery on claimant's right knee. On September 2, 1998, Dr. Nordt wrote that claimant's knee condition was a continuation of her previous compensable industrial injury. On October 12, 1998, responding to a questionnaire from claimant's counsel, Dr. Nordt wrote:

> Patient's arthroscopic findings indicated a problem that was primarily degenerative in nature. An acute injury, such as that occurring in [sic] 10/11/96, could have exacerbated this condition.

On February 23, 1999, the first operation and subsequent physical therapy having failed to relieve claimant's condition, Dr. Nordt performed another arthroscopic surgery on claimant's right knee. On June 8, 1999, in response to another questionnaire from claimant's counsel, Dr. Nordt indicated that claimant's October 11, 1996 accident aggravated, accelerated, or exacerbated an underlying condition and that that aggravation, acceleration, or exacerbation resulted in or contributed to her need for surgery on August 18, 1998 and February 23, 1999, respectively.

When asked at his deposition on June 28, 1999, about the differences between the responses he gave in the two questionnaires, Dr. Nordt acknowledged that, after the first arthroscopic surgery, he had some doubt about the causal relationship between claimant's current condition and her industrial injury. He confirmed his opinion that claimant's

condition was primarily degenerative in nature. He admitted, however, that he struggled with the question of "to what degree the problem [was] chronic, degenerative in nature and to what degree one can expect this to be acute, the result of an injury." The question, Dr. Nordt conceded, was "almost too difficult to know."

Dr. Nordt went on to say in his deposition, however, that, after the second surgery, he "firmed [his] opinion" about the causal contribution of claimant's work-related injury to her symptoms and need for the surgeries. Dr. Nordt opined that the industrial "accident probably contributed to the minutest degree" to claimant's need for the August 1998 and February 1999 surgeries. Claimant's symptoms, Dr. Nordt stated, made the surgeries necessary. Dr. Nordt explained his use of the phrase "to the minutest degree" to describe the industrial accident's causal connection with claimant's current condition, as follows:

> [Claimant's counsel] discussed [the second questionnaire] with me and talked a little bit about Virginia law and asked if he were able to . . . use the term "contribute," is what seems to have stuck out in my mind anyway, the term he used . . . and what I agreed with was "even one iota," can we say with a degree of medical certainty that these conditions were related, and having put it in sort of that minute of category, my answer to that would be yes.

It was, Dr. Nordt testified, "to that degree, that one iota, that minute degree" that he answered the questions on the second questionnaire. Dr. Nordt confirmed that his June 8, 1999

- 4 -

responses to the second questionnaire still accurately reflected his opinion.

Claimant filed a change-in-condition application with the commission on August 27, 1998, seeking temporary total disability benefits for the periods July 29, 1998 through November 15, 1998, and February 8, 1999 through May 9, 1999. The commission found, based on the uncontradicted opinion of Dr. Nordt, that claimant met her burden of proving that her August 18, 1998 and February 23, 1999 surgeries and the associated recovery periods during which she was disabled from working constituted a change in condition causally related to her October 11, 1996 industrial injury. Accordingly, the commission awarded claimant temporary total benefits for August 18, 1998 through October 12, 1998, and February 8, 1999 through April 12, 1999.

Appealing from that award, employer contends claimant failed to prove that her 1996 work-related injury causally contributed to her need to have the 1998 and 1999 operations. We disagree.

The commission's determination of causation is a finding of fact. American Filtrona Co. v. Hanford, 16 Va. App. 159, 165, 428 S.E.2d 511, 515 (1993). The factual findings of the commission are conclusive and binding on appeal if supported by credible evidence in the record. Southern Iron Works, Inc. v. Wallace, 16 Va. App. 131, 134, 428 S.E.2d 32, 34 (1993). "The fact that there is contrary evidence in the record is of no consequence if there is credible evidence to support the

- 5 -

commission's finding." Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991). "This rule applies when an expert's opinion contains internal conflict." Greif Companies/Genesco, Inc. v. Hensley, 22 Va. App. 546, 552, 471 S.E.2d 803, 806 (1996). "Likewise, the [c]ommission's conclusions upon conflicting inferences, legitimately drawn from proven facts, are equally binding on appeal." Watkins v. Halco Eng'g, Inc., 225 Va. 97, 101, 300 S.E.2d 761, 763 (1983). "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." Wagner Enters., Inc., 12 Va. App. at 894, 407 S.E.2d at 35.

Additionally, "[a] doctor's statement that a certain condition is probably connected to the injury means there is a reasonable likelihood of causation, which 'is sufficient to permit a trier of fact to accord the statement probative weight.'" Marriott Int'l, Inc. v. Carter, 34 Va. App. 209, 215, 539 S.E.2d 738, 741 (2001) (quoting Cook v. City of Waynesboro Police Dep't, 225 Va. 23, 30, 300 S.E.2d 746, 749 (1983)). "The testimony of a claimant may also be considered in determining causation . . . ." Dollar General Store v. Cridlin, 22 Va. App. 171, 176, 468 S.E.2d 152, 154 (1996).

Applying these principles to the circumstances presented in this case, we find that the medical record and Dr. Nordt's

opinions, coupled with claimant's testimony, constitute credible evidence to support the commission's factual determination that claimant's 1998 and 1999 operations were causally related to her 1996 industrial injury.  The medical record and claimant's testimony reflect that claimant suffered continuing pain in her right knee following the November 1996 surgery.  Dr. Nordt opined, following the 1998 surgery, that claimant's knee condition was a continuation of her 1996 work-related injury.  Shortly thereafter, Dr. Nordt expressed some doubt about his ability to conclude that claimant's industrial injury contributed, along with the degenerative condition of claimant's knee, to claimant's need for surgery, but he solidified his opinion after performing the second operation on claimant's right knee.  Following the 1999 surgery, he opined that claimant's work-related accident aggravated, accelerated, or exacerbated her pre-existing degenerative condition, which, in turn, resulted in or contributed to claimant's need for the 1998 and 1999 surgeries.  "[T]he accident," Dr. Nordt explained, "probably contributed to the minutest degree."  As the commission noted, Dr. Nordt offered the only medical opinion on the issue of causation.

Although some of Dr. Nordt's responses and statements regarding the causal relation between claimant's 1996 work-related accident and her 1998 and 1999 surgeries may arguably conflict with each other, the commission, as fact finder, was entitled to determine the weight, meaning, and

credibility to give his respective responses and statements and to reconcile any possible conflicts therein. Because the commission's finding that claimant's compensable injury causally contributed to her incapacity to work following the 1998 and 1999 operations is supported by credible evidence, we will not disturb that finding on appeal.

Employer also argues that claimant failed to meet her burden of proving by a preponderance of the evidence that her work incapacity was causally related to the 1996 industrial accident because Dr. Nordt testified only that "the accident probably contributed to the minutest degree." That testimony, employer asserts, fails to rise to the level of a preponderance of the evidence. The preponderance of the evidence in this case, employer argues, proves only that the true cause of claimant's knee surgeries in 1998 and 1999 was the degenerative condition of her knee.

We find that employer, in making this argument, misconstrues Dr. Nordt's opinion and confuses the "two causes" rule with the "more probable than not" rule. The pertinent findings and conclusions of Dr. Nordt may be stated as follows: (1) Claimant's 1998 and 1999 surgeries on her right knee resulted in claimant's temporary incapacity to work; (2) the condition of claimant's right knee necessitated the 1998 and 1999 surgeries; and (3) while primarily caused by the pre-existing degenerative knee disease, the condition of

- 8 -

claimant's right knee necessitating the 1998 and 1999 surgeries was also caused, to some small degree, by claimant's 1996 compensable work-related injury.

> In proving causation in a workers' compensation case where the evidence demonstrates two or more potential causative factors, one of two conclusions follows. Either, a combination of factors contributed to cause the disability; or, one of the factors caused the disability to the exclusion of the others.
>
> The "two causes rule" addresses those cases "where a disability has two causes: one related to the employment and one unrelated." Under the two causes rule, "full benefits [are] allowed when it is shown that 'the employment is a contributing factor.'" The "more probable than not rule," addresses those cases where only one of a number of possible factors caused the disability. Under the more probable than not rule, for the disability to be compensable, it must be more probable than not that it was caused by the work-related factor. That is, a preponderance of evidence must show that work was the cause of the disability.

Duffy v. Commonwealth/Dep't of State Police, 22 Va. App. 245, 251, 468 S.E.2d 702, 705 (1996) (citations omitted) (alteration in original).

Here, the evidence proved that the need for claimant's 1998 and 1999 knee surgeries was caused by two factors: the non-work-related degenerative condition and the compensable 1996 work-related injury. The extent or degree to which the work-related cause contributed is not important. It matters only that the work-related cause contributed in some part to

- 9 -

claimant's disability.  See Ford Motor Co. v. Hunt, 26 Va. App. 231, 237-38, 494 S.E.2d 152, 155 (1997) (applying "two causes" rule even though claimant's treating physician opined that disability was "mainly" caused by non-work-related condition). Thus, under the "two causes" rule, full benefits are allowed for claimant's disability.

Accordingly, we affirm the commission's award.  Claimant's request for appellate attorney's fees is denied.

Affirmed.