COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Benton and Kelsey
Argued at Richmond, Virginia


EUGENIA L. MAWSON
                                   MEMORANDUM OPINION* BY
v.    Record No. 0873-02-2          JUDGE JAMES W. BENTON, JR.
                                        APRIL 22, 2003
RAPPAHANNOCK GENERAL HOSPITAL AND
 RECIPROCAL OF AMERICA


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Robert L. Flax (Flax & Stout, on briefs), for
              appellant.

              Karen A. Gould (Angela C. Fleming; Crews &
              Hancock, P.L.C., on brief), for appellees.


     The Workers' Compensation Commission denied Eugenia L.

Mawson's change-in-condition application for permanent and total

incapacity benefits.  Mawson contends the commission erred in

ruling (1) that she was not disabled by her work injury, (2)

that she failed to prove a quantifiable loss of capacity of both

legs, and (3) that she did not suffer total and permanent

disability from her work injury.  For the reasons that follow,

we affirm the commission's denial of Mawson's claim for

benefits.

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

I.

On February 19, 1988, Eugenia L. Mawson, a registered nurse employed by Rappahannock General Hospital, sustained a back injury while assisting a patient. The commission found that Mawson suffered an acute lumbosacral strain and that her physicians diagnosed post-traumatic radicular neuropathy. The commission entered an award for the payment of temporary total disability benefits beginning February 26, 1988.

Following a 1996 hearing on the Hospital's change-in-condition application, the deputy commissioner found that "Mawson remains partially disabled as a result of the back pain caused by the work injury." The deputy commissioner also found "that Mawson is additionally disabled due to her mental condition, specifically her multiple personality disorder," but that "[i]t is questionable whether this mental disability was caused by the work injury." The deputy commissioner did not further address the issue of her mental disability because of the finding that "Mawson was partially disabled due to her back condition." On review, the commission affirmed the deputy commissioner's finding that Mawson continued to be partially disabled, but the commission also found "that whereas [Mawson] has experienced anxiety and depression related to the chronic [back] pain, her main psychiatric condition is her multiple personality disorder, which is not related to the occupational injury."

The record establishes that Mawson received compensation for various periods of temporary total and temporary partial disability for her back injury through September 18, 1997. In 1999, however, the commission denied Mawson's request for a panel of psychiatrists. The commission found that "there is no convincing explanation for the necessity of pain management . . . [because, the evidence] failed to link [Mawson's] psychiatric problems to the work-related injury." The commission further found that "[n]o established authorized treating physician has proposed or supported the request for pain management."

In 2001, Mawson filed an application for change in condition, which alleged permanent and total disability due to the loss of use of her legs. The commission denied Mawson's application. This appeal arises from that decision.

## II.

Our review of the commission's decision is governed by well established principles.

> "On appeal, we view the evidence in the light most favorable to . . . the party prevailing before the commission." Great Eastern Resort Corp. v. Gordon, 31 Va. App. 608, 610, 525 S.E.2d 55, 56 (2000). "A claimant must prove [her] case by a preponderance of the evidence." Bergmann v. L & W Drywall, 222 Va. 30, 32, 278 S.E.2d 801, 802 (1981); see Marketing Profiles, Inc. v. Hill, 17 Va. App. 431, 433, 437 S.E.2d 727, 729 (1993) (en banc). Furthermore, "[d]ecisions of the commission as to questions of fact, if supported by

credible evidence, are conclusive and binding on this Court." Allen & Rocks, Inc. v. Briggs, 28 Va. App. 662, 672, 508 S.E.2d 335, 340 (1998). Evidence to the contrary in the record "is of no consequence if there is credible evidence to support the commission's findings." Russell Loungewear v. Gray, 2 Va. App. 90, 95, 341 S.E.2d 824, 826 (1986). The consideration and weight to be given to the evidence, including medical evidence, are within the sound discretion of the commission. See Waynesboro Police v. Coffey, 35 Va. App. 264, 268, 544 S.E.2d 860, 861 (2001); Hungerford Mechanical Corp. v. Hobson, 11 Va. App. 675, 677, 401 S.E.2d 213, 215 (1991).

Pro-Football, Inc. v. Paul, 39 Va. App. 1, 10-11, 569 S.E.2d 66, 71 (2002).

### III.

In pertinent part, Code § 65.2-503 provides as follows:

C. Compensation shall be awarded pursuant to § 65.2-500 for permanent and total incapacity when there is:

1. Loss of both hands, both arms, both feet, both legs, both eyes, or any two thereof in the same accident;

2. Injury for all practical purposes resulting in total paralysis, as determined by the Commission based on medical evidence; or

3. Injury to the brain which is so severe as to render the employee permanently unemployable in gainful employment.

D. In construing this section, the permanent loss of the use of a member shall be equivalent to the loss of such member, and for the permanent partial loss or loss of use of a member, compensation may be proportionately awarded. . . .

- 4 -

Applying this statute, the Supreme Court has consistently held that

> "[t]he phrases 'total and permanent loss' or
> 'loss of use' of a leg do not mean that the
> leg is immovable or that it cannot be used
> in walking around the house, or even around
> the block.  They do mean that the injured
> employee is unable to use it in any
> substantial degree in any gainful
> employment."

Georgia-Pacific Corp. v. Dancy, 255 Va. 248, 252, 497 S.E.2d 133, 135 (1998) (quoting Virginia Oak Flooring Co. v. Chrisley, 195 Va. 850, 857, 80 S.E.2d 537, 541 (1954)).  Furthermore, we have held that "the proper inquiry[, when applying the statute,] was whether the rated loss of use in [the employee's] legs rendered both of [the employee's] legs effectively unusable." Georgia-Pacific Corp. v. Dancy, 24 Va. App. 430, 437, 482 S.E.2d 867, 871 (1997), aff'd, 255 Va. 248, 497 S.E.2d 133 (1998).  See also Pantry Pride-Food Fair Stores, Inc. v. Backus, 18 Va. App. 176, 180, 442 S.E.2d 699, 702 (1994) (holding that "evidence of a rated loss of twenty-five percent of both legs, . . . [and] evidence of . . . incapacity for employment, supports the commission's finding that the employee is permanently unemployable as a consequence of her loss of function in both legs").

                              A.

In denying Mawson's claim, the commission found as follows:

> The deputy commissioner denied the . . .
> Claim for permanent and total benefits based

- 5 -

on the failure of the evidence to "support a finding that [Mawson] has a quantifiable disability of the legs and that the disability renders her incapable of gainful employment." . . .

The medical evidence showed that [Mawson] has complained of pain in her right leg since the accident. The evidence did not show that [she] had an orthopaedic or neurological problem that would cause this pain, and it remained largely unexplained. Dr. [Vladimir] Gefon was not able to attribute [Mawson's] pain to any objective condition, instead diagnosing her generally with "back pain, legs pain." Thus, the loss of use to [Mawson's] legs could not based on any objective criteria, but only on pain. Dr. [Robert] Groble opined that [Mawson's] pain complaints were valid, and we have no reason to conclude that [her] pain is factitious. We are not persuaded, however, that the evidence showed that [she] lost all use of her right leg.

As for [Mawson's] left leg, the evidence clearly did not show a 100% loss of use. If anything, the evidence showed that [she] suffered occasional pain in her left leg. [Mawson] testified that her left leg felt "heavy," but did not describe left-leg pain. There was no evidence of any orthopaedic or neurological problem with her left leg. Throughout [Mawson's] treatment since the accident, her pain complaints have generally involved her back and right leg, not her left leg. Thus, we do not believe that Dr. Groble's opinion that her left leg was 100% disabled was persuasive, nor can we find any medical evidence supporting a specific loss of use of the left leg because of the February 1988 accident.

Credible evidence supports these findings. Although Dr. Groble, a psychiatrist, "rated [Mawson's] loss of legs at 100% in regard to her ability to work" and reported she is

- 6 -

"unable to work in any gainful employment," he indicated this condition flowed from "chronic intractable back pain" and gave no ratable loss that could be separately identified to each leg. The commission weighed his report along with other evidence and was "not persuaded . . . that the evidence showed that [Mawson] lost all use of her right leg" or that "any evidence support[ed] a specific loss of use of the left leg." The commission was aware that Dr. Groble treats Mawson for her depression and mental disorders. Furthermore, the record contains no indication Dr. Groble ever gave Mawson a physical examination or treated her physical conditions except by psychiatry.

Dr. Vladimir Gefon indicated Mawson's "legs make her disabled due to her pain, weakness, and instability" and opined that she "sustained a permanent injury as a direct result of the [work] accident." In that same report, however, he listed various restrictions Mawson should observe and said "[s]he will need to keep [these] restrictions in mind for any job she would engage in the future." He has neither opined that she is totally disabled nor quantified a percentage of disability. Indeed, the deputy commissioner found that Dr. Gefon's report "implies that [Mawson] is capable of gainful employment." Affirming the deputy commissioner's decision, the commission also referenced Dr. Gefon's indication of the restrictions on Mawson's future employment.

The commission was persuaded by Dr. Michael S. Scharf's reports. He opined that Mawson "has a chronic pain syndrome" but that he "cannot ascribe any real organic problem in her spine to account for the amount of pain . . . she is having." Dr. Scharf reviewed Dr. Groble's reports and indicated Dr. Groble has not disclosed any anatomical reasons to support his "assumption" that Mawson's inability to work is due to "her loss of legs." Contrary to Dr. Groble's reports, Dr. Scharf opined that nothing "from an anatomical standpoint, preclude[s] . . . Mawson from being gainfully employed" and also noted that she has "a lot of psychiatric dysfunction." He further opined that, "[d]ue to the longevity and nature of her pain, she has a five percent permanent anatomical impairment."

The commission was entitled to resolve disputed medical evidence and to draw reasonable inferences from the evidence it found to be more persuasive. Hawks v. Henrico County School Bd., 7 Va. App. 398, 404, 374 S.E.2d 695, 698 (1988). A corollary to that rule is "[i]f there is evidence or reasonable inference that can be drawn from the evidence to support the Commission's findings, they will not be disturbed by this Court on appeal, even though there is evidence in the record to support contrary findings of fact." Caskey v. Dan River Mills, Inc., 225 Va. 405, 411, 302 S.E.2d 507, 510-11 (1983). We hold that credible evidence supports the commission's findings that the evidence did not prove Mawson has a quantifiable disability

- 8 -

in her legs or is incapable of gainful employment as a result of her back injury.

B.

After reviewing the extensive medical evidence and the record in this case, the commission ruled that it "has specifically determined in prior opinions that [the Hospital] was not responsible for treatment of [Mawson's] mental and emotional problems."  Those rulings have never been appealed except as the issue is indirectly raised here.

The commission further held as follows:

> [W]e believe that the evidence established that [Mawson] was unable to engage in gainful employment.  She suffers from several conditions, any one of which would be sufficient to cause her to be unable to work.  She has been hospitalized several times for various problems, including chest pain and depression.  She has received emergency treatment on numerous occasions for chest pain and migraine headaches.  As noted . . . by . . . a recent primary care physician, [Mawson] has "a very complex medical history."
>
> We do not believe, however, that it is fair to conclude that the back injury suffered by [Mawson] in February 1988 caused [her] inability to engage in gainful employment.  The incomplete medical records indicated that [Mawson] had a serious left knee injury in 1982, suffered from chronic migraine headaches for many years preceding 1988, and suffered from severe mental and emotional problems since childhood.  We recognize that [Mawson] was able to function at a high enough level to become a registered nurse and work for many years in that capacity before the accident.  Since the accident, the medical evidence showed

- 9 -

that [she] has largely been unable to work and in fact has been confined to a hospital on several occasions.

* * * * * * *

[T]he evidence did not show that the combination of [Mawson's] leg problems and her inability to work resulted in her being permanently and totally disabled as a result of the February 1988 accident. Under the Act, an employer is held responsible for the loss suffered by an employee because of a compensable injury by accident. Without looking at a complete picture of [Mawson's] medical history before the accident, it appears that the February 1988 accident marked a radical turning point in [her] life. When considering what incomplete history of treatment before February 1998 that was before us, however, a different picture emerges. We do not believe that [Mawson's] complicated and extensive medical problems fairly can be traced to the February 1988 accident. At best, [she] continues to be partially disabled because of the February 1988 accident, and thus has not proved that the accident has resulted in permanent and total disability.

Credible evidence supports these findings. Although Dr. Groble reported that Mawson had a "history of psychiatric problems that had its onset subsequent to a work related back injury in 1988," the commission found from other evidence in the record that Mawson's psychiatric disability predated her work injury. That finding is supported by the opinions of Dr. Paul Mansheim and Dr. Kathleen Giles. Moreover, the evidence recited earlier in this opinion supports the finding that Mawson has a partial disability attributable to her work injury.

- 10 -

> "Medical evidence is not necessarily
> conclusive, but is subject to the
> commission's consideration and weighing."
> Furthermore, on appeal, we "[d]o not retry
> the facts, reweigh the preponderance of the
> evidence, or make [our] own determination of
> the credibility of the witnesses."

Marriott Int'l, Inc. v. Carter, 34 Va. App. 209, 215-16, 539

S.E.2d 738, 741 (2001) (citations omitted).

For these reasons, we affirm the commission's denial of

Mawson's application for a change in condition.

Affirmed.