COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Clements and McClanahan
Argued by teleconference


CHARLES LEE McDANIEL, JR.

                                                      MEMORANDUM OPINION* BY
v.       Record No. 1938-06-2               JUDGE JEAN HARRISON CLEMENTS
                                                  AUGUST 21, 2007
PHILIP MORRIS USA, INC. AND
 INDEMNITY INSURANCE COMPANY
 OF NORTH AMERICA


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

> Jamie L. Karek (Geoffrey R. McDonald & Associates, on brief), for
> appellant.
>
> Michael N. Salveson (Hunton & Williams, on brief), for appellees.


Charles Lee McDaniel, Jr., (claimant) appeals a decision of the Workers' Compensation

Commission (commission) terminating his temporary total disability benefits upon the

application of Philip Morris USA, Inc., and Indemnity Insurance Company of North America

(collectively, employer).  Claimant contends the commission erred in finding his ongoing

disability was not causally related to his compensable injury.  Finding no error, we affirm the

commission's decision.

As the parties are fully conversant with the record in this case, and because this

memorandum opinion carries no precedential value, this opinion recites only those facts and

incidents of the proceedings as are necessary to the parties' understanding of the disposition of

this appeal.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND

In 1982, claimant tore his left knee meniscus and underwent corrective surgery after which he missed four to five months of work with a different employer. Later in 1994, claimant twisted his left knee working for employer. For that injury, claimant took anti-inflammatories and missed no work. At some point, claimant was diagnosed with arthritis in his left knee. Claimant underwent two subsequent arthroscopies on his left knee some time in the late 1990s and in 2001, missing five to six weeks of work with employer each time. Over a twenty-year period, claimant received about ten cortisone shots for his left knee pain. Claimant knew he required a total knee replacement prior to his compensable injury.

During the year before his compensable injury, claimant worked full duty. He had some knee pain and took prescription medication occasionally. In May, June, and July 2004, claimant took no pain medication for his knee. Except for a cortisone injection he received in May 2004, claimant's left knee was feeling "really good" prior to the compensable injury. From July 2002 through the date of his compensable injury in 2004, claimant wore a knee brace.

On July 16, 2004, claimant suffered the compensable injury to his left knee while working as a plumber/pipe fitter for employer. Claimant never returned to employment. Pursuant to an award of the commission, employer paid claimant temporary total disability benefits for the period July 17, 2004, through May 5, 2005.

Immediately following claimant's injury by accident, he suffered pain and swelling of his left knee. He relied on crutches after the injury and experienced a "giving way sensation" in his knee. Dr. Higgs evaluated claimant on July 27, 2004, and August 10, 2004. He conducted an arthroscopic debridement surgery on September 8, 2004, to resolve claimant's July 16 injury.

After the September 8 surgery, Dr. Higgs documented several evaluations of claimant and also noted claimant's reports of post-surgery recovery. In one account dated September 21, 2004,

Dr. Higgs stated: "The patient reports no significant pain. The pain that he had prior to surgery the sharp stabbing pain has been resolved." Later, on October 26, 2004, Dr. Higgs wrote: "He reports improving pain, no mechanical [symptoms] as present prior to the surgery." Dr. Higgs's letter to the insurer, dated November 15, 2004, stated:

> Mr. McDaniel's osteoarthritis is not a direct result of the injury sustained at work. The patient had an acute injury that has been arthroscopically addressed. I anticipate that he will approach pre-injury status and then get his [maximum medical improvement] for this treatment in a short period of time and then resume his treatment with Dr. [Kiritsis] for his ongoing osteoarthritis.

Following a December 2, 2004 evaluation of claimant, Dr. Higgs noted that claimant's left knee was "still painful" and that claimant was "making slow steady progress." He diagnosed: "Slow recovery from his work injury in the setting of pre-existing osteoarthritis." Dr. Higgs recommended proceeding with knee replacement surgery if claimant did not improve within four weeks. He further noted, however, that "the knee joint replacement surgery [would] not be related to the injury he sustained at work."

Claimant's physical therapist, Jess Brown, documented that claimant expressed improvement in status on September 30, 2004; that on October 4, 2004, he had slightly less pain than at his previous session; that on October 19, 2004, he stated "his knee overall is a little better as he is having less difficulty and pain with walking" but continued to have significant pain and difficulty with "sit to stand transitions" and with the knee giving way; and that on December 6 and 8, 2004, he had "no new complaints."

On January 6, 2005, Dr. Higgs stated that claimant was "continuing to have pain which [was] sharp and stabbing and aching in quality." Dr. Higgs also opined claimant had reached his maximum medical improvement for his work injury. Additionally, Dr. Higgs reported:

> Using the AMA Guide to Permanent Impairment he has a 4% impairment of the left knee. The patient is not cleared to return to

work. It is recommended that he have a total knee replacement however the knee replacement will be for the treatment of injury pathology associated with previous work injury and pre-existing osteoarthritic process.

In a letter to insurer dated February 7, 2005, Dr. Higgs again noted his recommendation for total knee replacement surgery "as was planned at some point in the future prior to his work injury" and stated claimant "had significant pre-existing osteoarthritis prior to the injury sustained at work."

On February 17, 2005, Dr. Higgs responded to a questionnaire provided by claimant's counsel. Therein, he replied in the negative as to "whether the condition for which you referred Mr. McDaniel to Dr. Jessup [for knee replacement surgery] is related to his industrial injury." In the same questionnaire, Dr. Higgs answered in the affirmative when asked whether claimant's July 16, 2004 injury "aggravated a pre-existing condition, pushing up the need for surgery which he probably would have needed in the future." In another questionnaire from claimant's counsel dated July 21, 2005, Dr. Higgs selected "no" when asked whether claimant's ongoing disability was "directly related to his injury at work . . . , which aggravated a pre-existing condition in his left knee." Dr. Higgs further explained his answer, writing that claimant's July 16, 2004 work-related injury was "adequately treated" by the September 8, 2004 surgery. Dr. Higgs added that claimant had a total knee replacement planned before the July 16 accident.

On May 3, 2005, employer filed an application to terminate claimant's temporary total disability benefits on the ground that his ongoing disability was not causally related to his compensable injury by accident. The deputy commissioner held a hearing on employer's application on September 26, 2005.

At that hearing, claimant testified that, despite the September 8, 2004 surgery, he continued to have significant and debilitating left knee pain. However, on cross-examination, claimant could not explain his own statements to Dr. Higgs reporting he had no significant pain and that the sharp

- 4 -

stabbing pain had been resolved after his September 8, 2004 surgery. Claimant acknowledged he tried to answer Dr. Higgs's questions as best he could.

Following the hearing, the deputy commissioner found employer's evidence insufficient to prove claimant's ongoing disability was unrelated to the compensable injury and denied employer's application to terminate claimant's temporary total disability benefits. Upon review, the commission reversed the deputy commissioner's judgment and terminated temporary total disability benefits. In reaching that decision, the commission noted the question of disability was essentially a medical one and relied on Dr. Higgs's consistent statements that claimant's ongoing disability was not causally related to the compensable injury.

This appeal by claimant followed.

## II. ANALYSIS

On appeal, claimant contends that, because Dr. Higgs opined that claimant's compensable injury aggravated his pre-existing knee problems, "it is clear that [claimant's] ongoing disability is related to his work accident." Thus, he concludes, the commission erred in finding his ongoing disability was not causally related to his compensable injury. We disagree.

Under settled principles of appellate review,

> [t]he commission's determination of causation is a finding of fact. American Filtrona Co. v. Hanford, 16 Va. App. 159, 165, 428 S.E.2d 511, 515 (1993). The factual findings of the commission are conclusive and binding on appeal if supported by credible evidence in the record. Southern Iron Works, Inc. v. Wallace, 16 Va. App. 131, 134, 428 S.E.2d 32, 34 (1993). "The fact that there is contrary evidence in the record is of no consequence if there is credible evidence to support the commission's finding." Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991). "This rule applies when an expert's opinion contains internal conflict." Greif Companies/Genesco, Inc. v. Hensley, 22 Va. App. 546, 552, 471 S.E.2d 803, 806 (1996). "Likewise, the [c]ommission's conclusions upon conflicting inferences, legitimately drawn from proven facts, are equally binding on appeal." Watkins v. Halco Eng'g, Inc., 225 Va. 97, 101, 300 S.E.2d 761, 763 (1983). "In determining whether credible

evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." Wagner Enters., Inc., 12 Va. App. at 894, 407 S.E.2d at 35.

Henrico County Sch. Bd. v. Etter, 36 Va. App. 437, 443-44, 552 S.E.2d 372, 375 (2001).

Applying these principles to the circumstances presented in this case, we find the medical record and Dr. Higgs's opinions support the commission's factual determination that claimant's ongoing disability was not causally related to his compensable injury.

The medical record and claimant's testimony reflect that claimant suffered a long history of left knee problems including a meniscus tear and subsequent surgery in 1982, a left knee twist in 1994, an osteoarthritis diagnosis, two arthroscopies in the late 1990s and 2001, and several cortisone shots and other medications to alleviate his left knee pain. Following claimant's compensable injury by accident in July 2004 and remedial surgery in September 2004, the medical record documents claimant's recovery and return to pre-injury status. Dr. Higgs's post-surgery reports reveal that claimant's pre-surgery pain and mechanical symptoms in his left knee were resolved by the surgery. Claimant's physical therapist documented claimant's statements of improving status and decreased pain in his left knee. Later, Dr. Higgs stated claimant's osteoarthritis was not "a direct result of the injury sustained at work" and, having "arthroscopically addressed" the compensable injury, he anticipated claimant would return to "pre-injury status and resume treatment with Dr. [Kiritsis] for his ongoing osteoarthritis." In other post-surgery records, Dr. Higgs opined that claimant's work injury occurred in the setting of "pre-existing osteoarthritis" and that claimant had reached his maximum medical improvement for his work injury. He further opined that claimant's ongoing disability was not "directly related to his injury at work . . . , which aggravated a pre-existing condition in his left knee," and that the September 8, 2004 surgery "adequately treated" the compensable injury. Moreover, as he had discussed on several occasions with claimant, Dr. Higgs recommended a

total knee replacement for the "injury pathology associated with previous work injury and pre-existing osteoarthritic process."

As the commission noted, Dr. Higgs offered the only medical opinion on the issue of causation. From Dr. Higgs's medical records and opinions, the commission could reasonably determine, as a matter of fact, that the compensable injury and any aggravation of claimant's pre-existing knee problems caused thereby were resolved by the September 8, 2004 surgery and that claimant's ongoing disability was not causally related to the compensable injury. We have noted that "[m]atters of weight and preponderance of the evidence, and the resolution of conflicting inferences fairly deducible from the evidence, are within the prerogative of the commission and are conclusive and binding on the Court of Appeals." Kim v. Sportswear, 10 Va. App. 460, 465, 393 S.E.2d 418, 421 (1990) (citation omitted). Although some of Dr. Higgs's responses and statements regarding the causal connection between claimant's ongoing disability and his compensable injury may arguably conflict with each other, the commission, as fact finder, was entitled to determine the weight, meaning, and credibility to give his respective responses and statements and to reconcile any possible conflicts therein.

Because the commission's finding that claimant's ongoing disability was not causally related to his compensable injury is supported by credible evidence, we will not disturb that finding on appeal.

### III. CONCLUSION

For these reasons, we affirm the judgment of the commission.

Affirmed.