COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Beales and Senior Judge Annunziata


MILLER & LONG, INC. AND
  HARTFORD CASUALTY INSURANCE COMPANY/
  SPECIALTY RISK SERVICES

                                                          MEMORANDUM OPINION[*]
v.        Record No. 1132-11-2                                PER CURIAM
                                                           DECEMBER 6, 2011
LAMONT JAMES KNIGHT


                FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            (Claire C. Carr; Rachel A. Riordan; Kalbaugh Pfund & Messersmith,
            on brief), for appellants.  Appellants submitting on brief.

            (Lynn A. Bradley; Tucker Griffin Barnes, P.C., on brief), for
            appellee.  Appellee submitting on brief.


        Miller & Long and its insurer, Hartford Casualty Insurance Company/Specialty Risk

Services, (hereinafter collectively employer) appeal a decision of the Workers' Compensation

Commission finding that the left fibular fracture suffered by Lamont James Knight (claimant) on

December 25, 2009, was a compensable consequence of his work-related accident on October

22, 2009.  We have reviewed the record and the commission's opinion and find that there is

credible evidence to support the unanimous opinion of the commission.  Accordingly, we affirm

the commission's decision.

                                    I.  Background

        We view the evidence on appeal in the light most favorable to "the prevailing party

before the commission."  Dunnavant v. Newman Tire Co., 51 Va. App. 252, 255, 656 S.E.2d

431, 433 (2008).

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Claimant, a carpenter's helper, fell on October 22, 2009, while carrying a twenty-one-foot metal beam on his shoulder with his right arm. Claimant landed on his tailbone and left side and immediately experienced pain in the upper part of his left hip and in his right wrist. After reporting his injuries to the foreman and the superintendent, he sought emergency treatment at the University of Virginia Hospital (UVA) on October 26, 2009. UVA diagnosed claimant with left hip and right wrist contusions and placed him on "light duty and lifting" through October 28, 2009.

On October 29, 2009, claimant returned to UVA complaining of problems with his left lower back, but no radiating pain. X-rays revealed no fractures in his lumbar spine, coccyx, or right wrist. UVA placed claimant in a wrist splint and excused him from work for five days. On November 2, 2009, claimant reported to UVA he was suffering from acute lower back pain, now radiating into his upper back. Claimant stated he had experienced back pain for two weeks. UVA prescribed Vicodin and restricted claimant from activities involving lifting, bending, twisting, or standing. The restrictions extended through November 9, 2009.

Beginning November 4, 2009, claimant received medical treatment from Dr. Evan B. Heald, an internist at University Medical Associates Clinic (UMA). Claimant's pain had progressed to his left shoulder and neck, with occasional pain in his left wrist, and some pain radiating into his lateral left thigh. He also experienced tiredness in his low back with no focal weakness. Dr. Heald diagnosed claimant with "[l]ow back strain with some possible referred/radicular symptoms into the left lateral thigh," and released him for light-duty work until November 9, 2009. In addition to the November 2 work restrictions, claimant was prohibited from heavy sweeping or pushing.

Five days later, claimant returned to UMA and saw Dr. Joel Schectman. At that time, he complained of pain in his left side and intermittent numbness in the bottom of his foot.

Dr. Schectman, who found claimant suffered from low back pain and sciatica, prescribed physical therapy, heat, and medication.

UMA continued to treat claimant for lower back pain, as well as pain radiating into his left leg and foot. On November 20, 2009, claimant reported to Dr. P. Preston Reynolds that his left leg was "weak and unreliable." He also reported an episode of incontinence.

On December 2, 2009, Dr. A. Bobby Chhabra, an orthopedic surgeon at McCue Center Outpatient Clinic, examined claimant. Dr. Chhabra recommended continuing his light-duty restrictions and ordered an MRI of claimant's right wrist and lumbar spine. On December 14, 2009, Dr. Gavin Slitt, an internist at UMA, wrote a letter excusing claimant from work for several dates from October through December 2009. Dr. Slitt noted that claimant's symptoms were "most consistent with mechanical lower back injury."

Claimant underwent an independent medical examination (IME) on December 23, 2009. Dr. Howard G. Stern, who examined claimant, concluded his left lower back pain was causally related to the October 22, 2009 accident and recommended light-duty restrictions.

Two days after his IME, claimant fell after twisting his left ankle as he walked to his mailbox. When claimant sought medical treatment on December 28, 2009, he reported he fell after his "back [and] leg gave out." An x-ray revealed a fracture in claimant's left distal fibula.

Dr. Adam Shimer, an orthopedic surgeon who treated claimant on January 4, 2010, observed that he had suffered "persistent subjective weakness of his left leg" for the past two and a half months, and continued to complain of low back pain and left leg pain and weakness. Dr. Shimer noted claimant reported that the weakness in his left leg had caused him to fall and fracture his ankle.

On January 16, 2010, claimant underwent an MRI of his lumbar spine. The MRI revealed no "fracture, malalignment, or soft tissue injury" and showed mild, multilevel

degenerative changes and stenosis. While Dr. Shimer saw no "compressive or traumatic lesions that could account for his left leg weakness," he recommended aggressive physical therapy for claimant, and noted that, if claimant's symptoms persisted, an EMG/nerve conduction study should be considered.

Based on the MRI results, Dr. Stern prepared an addendum to his IME in June 2010, opining that no causal relationship existed between claimant's October work accident and his fall in December. Dr. Stern found that claimant had not suffered any structural lumbar spine injury in his work accident and that his back injury had fully resolved without any permanency.

Dr. Andrew Wolf, a UMA physician who oversaw claimant's treatment beginning November 4, 2009, disagreed with Dr. Stern's assessment. In a letter dated July 14, 2010, Dr. Wolf observed that

> it is certainly plausible that sudden back pain and spasm – as [claimant] related occurred – could cause [him] to be unbalanced and feel as though his leg gave out. His history given to the resident physician on 12/28/09 was that he "fell on Friday after his back and leg gave out" so the early medical documentation is consistent with this. If the back pain caused the 12/25/09 fall, the fibula fracture is indeed related the October 2009 work accident. All treatment necessitated by the fracture and work disability from it would also be related to the October 2009 work accident.

> . . . I would like to emphasize that MANY people have severe low back pain without demonstrated findings on an MRI-the MRI will rarely if ever show findings of severe lumbosacral strain, which is what I believe is causing the predominant symptoms in Mr. Knight's case. Mr. Knight clearly has suffered and continues to suffer low back pain that began close in time to his October, 2009 fall (beginning later in the day and getting progressively worse over the ensuing day or two, which is what one would expect with severe lumbosacral strain, as opposed to disc herniation, which generally causes maximum pain immediately upon injury). . . . Mr. Knight's pain complaints and his history of onset and worsening are completely consistent with the unremarkable MRI findings.

*    *    *    *    *    *    *

Regarding Mr. Knight's occupational status, I continue to hold to the opinion . . . [that] [t]o a reasonable degree of medical probability, the work disability and work restrictions issued throughout Mr. Knight's treatment at UMA[1] are the result of the October 2009 work accident.

Dr. Wolf "strongly recommended" physical therapy for claimant, and if that proved unsuccessful, an EMG/nerve conduction study due to the risk of "impingement . . . not fully evident on the MRI." Dr. Wolf observed that impingement was consistent with the finding of mild L5-S1 foraminal stenosis on the MRI and claimant's response to neuropathic medications.

At the compensation hearing, claimant denied having ever missed time from work prior to October 22, 2009, as the result of problems with his lower back, right wrist, left hip, or left leg. Claimant testified that, following the October accident, he experienced pain in his right wrist and his "hip area all the way around to [his] . . . center back." In addition, he had pain "running" down his left leg, and he noted, "at times . . . my back . . . and my left leg would feel flimsy, weak and . . . give out to where I had to sit down." Claimant explained that, on the day of his December accident, his leg and back felt "flimsy" and "gave out" as he stepped off the curb outside his apartment.

## II. Analysis

Employer argues the commission erred in finding that claimant's fibular fracture and fall on December 25, 2009, was a compensable consequence of his October 22, 2009 work accident. In support of this argument, employer maintains claimant's testimony that he fell because his back "gave out" is not credible. It also contends that Dr. Wolf failed to give an opinion within a reasonable degree of medical certainty that appellant's back injury caused his December fall.

---

[1] Following his December fall, UMA health care providers continued to treat claimant and excuse him from work. On March 18, 2010, Dr. Amy Althoff wrote a letter restricting him from returning to work until "he has received physical therapy treatment which is medically indicated of [sic] his back and leg pain."

To receive an award of medical benefits under Code § 65.2-603(A)(1), the evidence must "support a finding of causal relation between the accidental injury and the [medical] treatment." Watkins v. Halco Eng'g, Inc., 225 Va. 97, 101, 300 S.E.2d 761, 763 (1983). The claimant bears the burden of proving this causal relation by a preponderance of the evidence. Hoffman v. Carter, 50 Va. App. 199, 214, 648 S.E.2d 318, 326 (2007). In other words, "for the disability [and its attendant medical treatments] to be compensable, it must be more probable than not that [the accident] was caused by the work-related factor." Duffy v. Commonwealth ex rel. Dep't of State Police, 22 Va. App. 245, 251, 468 S.E.2d 702, 705 (1996).

> Where such a causal link exists, "the doctrine of compensable consequences extends the coverage of the Workers' Compensation Act to the subsequent injury because the subsequent injury is treated as if it occurred in the course of and arising out of the employee's employment."

Berglund Chevrolet, Inc. v. Landrum, 43 Va. App. 742, 751, 601 S.E.2d 693, 697 (2004) (quoting Bartholow Drywall Co. v. Hill, 12 Va. App. 790, 794, 407 S.E.2d 1, 3 (1991)) (citation omitted).

The commission's determination of causation is a finding of fact. See Henrico Cnty Sch. Bd. v. Etter, 36 Va. App. 437, 443, 552 S.E.2d 372, 375 (2001); Marcus v. Arlington Cnty Bd. of Supers., 15 Va. App. 544, 551, 425 S.E.2d 525, 530 (1993). "The commission's factual findings . . . are conclusive and binding on this Court if supported by credible evidence." R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 213, 390 S.E.2d 788, 789 (1990). "The fact that there is contrary evidence in the record is of no consequence if there is credible evidence to support the commission's finding." Wagner Enters, Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991) (citing Ingersoll-Rand Co. v. Musick, 7 Va. App. 684, 688, 376 S.E.2d 814, 817 (1989)).

"Causation of a medical condition may be proved by either direct or circumstantial evidence, including medical evidence or 'the testimony of a claimant.'" Farmington Country Club v. Marshall, 47 Va. App. 15, 26, 622 S.E.2d 233, 239 (2005) (quoting Dollar Gen. Store v. Cridlin, 22 Va. App. 171, 176, 468 S.E.2d 152, 154 (1996)). "'Medical evidence is not necessarily conclusive, but is subject to the commission's consideration and weighing,'" Cridlin, 22 Va. App. at 176, 468 S.E.2d at 154 (quoting Hungerford Mech. Corp. v. Hobson, 11 Va. App. 675, 677, 401 S.E.2d 213, 215 (1991) (addressing evidence used to establish percentage of incapacity suffered by employee)), and the commission may consider a claimant's testimony in its determination of causation, id. (citing Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 281, 348 S.E.2d 876, 878 (1986)). To this end, this Court has held,

> "To appraise the true degree of indispensability which should be accorded medical testimony, it is first necessary to dispel the misconception that valid awards can stand only if accompanied by a definite medical diagnosis. True, in many instances it may be impossible to form a judgment on the relation of the employment to the injury, or relation of the injury to the disability, without analyzing in medical terms what the injury or disease is. But this is not invariably so. In appropriate circumstances, awards may be made when medical evidence on these matters is inconclusive, indecisive, fragmentary, inconsistent, or even nonexistent."

Id. at 177, 468 S.E.2d at 154-55 (quoting 2B Arthur Larson, The Law of Workmen's Compensation § 79.51(a) (1995)).

"'As the factfinder, the commission is charged with the responsibility of resolving questions . . . of controverted facts,'" including questions of witness credibility. United Airlines, Inc. v. Hayes, 58 Va. App. 220, 238, 708 S.E.2d 418, 426-27 (2011) (quoting Metro. Wash. Airports Auth. v. Lusby, 41 Va. App. 300, 312, 585 S.E.2d 318, 323 (2003)).

In support of its argument that claimant's testimony regarding the cause of his December fall is not credible, employer notes that claimant told Dr. Francisco Caycedo on January 6, 2010, that he injured his ankle because he "slipped while walking . . . ." However, the commission

reviewed claimant's medical records and found that his history of reported pain in his back and left leg, as well as weakness in his left leg, corroborated his testimony that his back "gave out" on December 25, 2009, resulting in his fall. It noted that, beginning in early November 2009, claimant had reported pain radiating from his back to his left leg and foot, as well as "left-sided pain with intermittent foot numbness." On November 9, 2009, he was diagnosed with sciatica, and on November 20, 2009, claimant reported to Dr. Reynolds his left leg was "weak and unreliable" and that he had experienced an episode of incontinence. Consistent with his reports of weakness in his leg and numbness in his foot, claimant told Dr. Preston on December 28, 2009, he had fallen three days earlier after his back and leg "gave out." Dr. Slitt, who documented that claimant's back "gave out," found claimant's explanation "consistent with a fall and fracture." Dr. Shimer noted claimant had a history of left leg numbness "which led his left leg to collapse and resulted in injury to his left ankle."

Claimant's account was further corroborated by Dr. Wolf's July 14, 2010 letter stating that the progression and nature of his complaints to his health care providers, as well as the lack of MRI findings, were consistent with a severe lumbosacral strain. Dr. Wolf found it plausible that claimant's back pain and spasm caused him to feel as if his back gave out. Dr. Wolf went on to opine, to a reasonable degree of medical probability, "that the work disability and work restrictions issued throughout Mr. Knight's treatment at UMA are the result of the October 2009 work accident."

Employer points out that claimant testified he had "problems" with his right ankle prior to the accident on October 22, 2009, as well as "instability and problems with [his] gait." It argues that, at the time of Dr. Wolf's letter, Dr. Wolf was "apparently not aware of" this pre-existing gait problem, thereby diminishing the weight of his causation opinion. Employer also attacks the credibility of Dr. Wolf's opinion letter because it fails to address Dr. Wolf's

January 13, 2010 notation that claimant reported he "fell . . . in the snow" in December 2009. However, employer points to nothing in the record indicating Dr. Wolf was unaware of claimant's pre-existing right ankle problem or that claimant told Dr. Wolf his fall resulted from slippery winter conditions rather than his back "giving out." Cf. Sneed v. Morengo, Inc., 19 Va. App. 199, 205, 450 S.E.2d 167, 171 (1994) (no error in discounting medical opinion where claimant expressly acknowledged never having revealed his complete medical history). See also Amelia Sand Co. v. Ellyson, 43 Va. App. 406, 412, 598 S.E.2d 750, 753 (2004) (expert opinion still credible despite lack of access to claimant's entire medical history where record failed to show claimant lied to health care provider or that expert had changed his original opinion).

As there is credible evidence in the record to support the commission's finding of causation, we do not disturb the commission's finding on review. See City of Norfolk v. Lillard, 15 Va. App. 424, 430, 424 S.E.2d 243, 246 (1992). Furthermore, because we conclude the commission did not err in finding that the fibular fracture on December 25, 2009, was a compensable consequence of the October 22, 2009 work accident, we need not address employer's argument[2] that the commission erred in finding claimant was entitled to compensation benefits and was disabled as alleged.

Affirmed.

---

[2] Employer argues that

> if this Court finds that the December 25, 2009 incident was not a compensable consequence of the initial October 22, 2009 work accident, the resulting disability from the fibular fracture is therefore unrelated to the work accident of October 22, 2009. As such, the alleged period of disability should be barred as the evidence reflects the claimant unjustifiably refused selective employment and abandoned his job with the employer.