## Richmond

## CAUDLE-HYATT, INC. & AETNA INSURANCE CO.

### V.

## LUCILLE MIXON

November 21, 1979.

Record No. 790449.

Present: All the Justices.

*Mary Louise Kramer; Frank B. Miller, III (Sands, Anderson, Marks & Miller,* on brief), for appellants.
*Charles F. Groom, Jr. (Harry E. Atkinson,* on brief), for appellee.

I'ANSON, C.J., delivered the opinion of the Court.

We granted the writ in this appeal from the Industrial Commission in order to consider whether the employee's spouse had established actual dependency within the meaning of Code § 65.1-66 and whether the employee had been "injuriously exposed" to causative hazards within the meaning of Code § 65.1-52.

For many years, the employee, Henry C. Mixon, had been exposed to asbestos in his work as an insulator. In June of 1976, he was employed by Caudle-Hyatt, Inc., to work at the Anheuser-Busch Brewery in Williamsburg, Virginia. The brewery was being enlarged by a new addition to the building, thus requiring "tie-ins" between the new hot

and cold water systems and the old systems. Although both the new and old cold water systems were free of asbestos, the old hot water piping insulation contained asbestos. From June through October of 1976, Mixon worked over seven hundred hours for Caudle-Hyatt. The record does not disclose how many of these hours were spent in completing the necessary tie-ins. Another insulator estimated that approximately four hours out of every week of his work at the brewery were devoted to the demolition work involved in completing tie-ins. One worker testified that Mixon worked with him for at least one month in one room having a number of hot tie-ins. The contract manager for Caudle-Hyatt testified that there were fifty tie-ins, approximately twenty-five of which were hot, to be completed at the brewery. During the work, materials containing asbestos collected on the floor until swept up either during the day or at the end of the day.

Mixon was hospitalized on November 2, 1976, and underwent surgery a few days later. After surgery the doctor who had performed the surgery told Mixon that he was suffering from asbestos tumors in his stomach and in other organs. Mixon died on May 20, 1978. The autopsy revealed the cause of death to be mesothelioma, a cancer produced by exposure to asbestos.

Henry Mixon's claim for Workmen's Compensation benefits, filed prior to his death, proceeded as a claim for death benefits for his wife and stepchild. On October 24, 1978, a hearing on the claim was held before a deputy commissioner. In this hearing, Lucille Mixon testified that she had been employed for thirty years as a teacher; that before her marriage to Mixon, she was financially independent and able to support herself; that she and her husband had purchased a new home; that they had commingled their funds; and that after her husband's death, "I could certainly have continued to live on what we [Mrs. Mixon and her child] made but I think what Hank [her husband] brought in helped us live a little bit above that." On November 29, 1978, the deputy commissioner rendered an opinion granting benefits to both Mixon's wife and stepchild. In his opinion, the deputy commissioner determined that Mixon had been exposed to asbestos dust on a number of work occasions during his employment with Caudle-Hyatt, Inc., during the months of June through October 1976 and that liability attached to the employer in whose employ the claimant was last exposed to the causative hazards of the disease. The deputy commissioner also determined that the dependency of the wife and stepchild was presumed as a matter of law and that the employer had refuted neither dependency. The full Commission, adopting the findings of fact and conclusions of law of the deputy commissioner,

affirmed his rulings.

■ We first address the appellants' contention that Lucille Mixon has not demonstrated her dependency upon her husband's earnings. Code § 65.1-66, as amended in 1973, provides in pertinent part:

> The following persons shall be conclusively presumed to be dependents wholly dependent for support upon the deceased employee:
> (1) A wife upon a husband whom she had not voluntarily deserted or abandoned at the time of the accident or with whom she lived at the time of his accident, if she is then actually dependent upon him.
> (2) A husband upon a wife whom he had not voluntarily deserted at the time of the accident or with whom he lived at the time of her accident if he is then actually dependent upon her.

One of the purposes of the 1973 amendments was to make uniform the requirements of dependency without regard to gender. Prior to the 1973 amendments, benefits could be awarded to wives not actually dependent upon their husbands, whereas husbands were denied benefits unless they were actually dependent upon their wives and they were "then incapable of self-support."*

The appellants contend that the 1973 amendments require a wife to demonstrate that she is actually dependent upon her husband. Because Lucille Mixon testified that she "could certainly have continued to live on" her income apart from her husband's, the appellants conclude that she is not dependent within the meaning of this Code section.

We do not agree with the appellants' conclusion. Although the language of Code § 65.1-66 no longer presumes a wife's dependency upon her husband, this section does not require the wife to establish that she was wholly dependent upon her husband's earnings. It is highly unlikely that the General Assembly intended to restrict the conclusive presumption of total dependency to instances where the

---

* The pre-1973 text provided that:
"The following persons shall be conclusively presumed to be next of kin wholly dependent for support upon the deceased employee:
(1) A wife upon a husband whom she had not voluntarily deserted or abandoned at the time of the accident.
(2) A husband upon a wife with whom he lived at the time of her accident if he is then incapable of self-support and actually dependent upon her."

spouse had demonstrated that he or she was wholly dependent. Such a restriction would nullify the purpose for the conclusive presumption. We conclude, therefore, that the conclusive presumption of Code § 65.1-66 arises once actual dependency, even though only partial, has been established.

In interpreting a related statute, Code § 65.1-67, we have defined dependency as meaning that "the claimant looked to and relied on the contributions of the employee, ' "in whole or in part, as a means of support and maintenance in accordance with his or her social position and accustomed mode of life." ' " *Miller & Long Co.* v. *Frye,* 215 Va. 591, 594, 212 S.E.2d 258, 260 (1975), *quoting Glassco* v. *Glassco,* 195 Va. 239, 242, 77 S.E.2d 843, 845 (1953). In light of our conclusion that partial dependency is sufficient to establish the conclusive presumption of Code § 65.1-66, this definition of dependency established in our interpretation of Code § 65.1-67 is equally applicable to Code § 65.1-66.

The evidence in this case establishes that Lucille Mixon and her husband had both contributed funds towards the purchase of a new home, that they had commingled their funds, and that her husband's salary enabled them to "live a little bit above" the standard of living otherwise attainable. This evidence sufficiently demonstrates that, in actuality, she was at least partially dependent upon her husband. Consequently, under the language of Code § 65.1-66, she is conclusively presumed to be wholly dependent upon him.

Having determined that Mixon's wife has established her dependency, we turn to a consideration of the appellants' contention that Mixon was not "injuriously exposed" to asbestos during his employment at the Anheuser-Busch Brewery. Code § 65.1-52 defines "injurious exposure" as "an exposure to the causative hazard of such disease which is reasonably calculated to bring on the disease in question." While conceding that Mixon was exposed to a causative hazard, the appellants argue that the exposure was not "injurious" because it did not cause, augment, or aggravate the disease.

As the appellants note, we defined "injurious exposure" in *Pocahontas Fuel Co.* v. *Godbey,* 192 Va. 845, 853, 66 S.E.2d 859, 864 (1951), to be "an exposure or contact with the dangers of the disease which proximately causes the malady, or augments or aggravates the pre-existing disease." This definition, however, has been supplanted by the statutory definition of "injurious exposure" added subsequent to *Godbey.* Acts 1962, c. 588 at 914. Under the statutory definition, an exposure is injurious if it is "reasonably calculated to bring on the

disease in question." Code § 65.1-52.

A claimant can meet this statutory standard either by establishing actual causation or aggravation of the disease or by showing that the exposure was of such duration and intensity that it generally causes the disease in question, even though actual causation or aggravation cannot be established in the claimant's case. The statutory definition was intended to relieve claimants of the burden of establishing actual causation in cases where such proof is difficult, if not impossible.

■ Although the statutory definition is broader than the definition set forth in *Pocahontas,* it nevertheless does not extend an employer's liability to exposures not "reasonably calculated to bring on the disease in question." Our holding in *Cooper* v. *Mary E. Coal Corporation,* 215 Va. 806, 214 S.E.2d 162 (1975), acknowledges this limitation upon an employer's liability. In *Cooper,* we rejected the contention that proof of the disease's existence prior to the time of employment would defeat a claim of "injurious exposure" during that employment. We did not, however, conclude that any exposure to the causative hazards would be sufficient. Instead, we remanded the case to the Industrial Commission with the instruction that the claimant should be provided an opportunity to present evidence concerning injurious exposure.

■ In this case, the evidence supports the conclusion that Mixon's exposure to asbestos at the Anheuser-Busch Brewery was "injurious."

The claimant's medical witness, Dr. Cecil Evans, concluded that Mixon had been "injuriously exposed" to asbestos during his work at the Anheuser-Busch Brewery. He based his opinion upon several factors, including his personal knowledge that one of his patients had contracted mesothelioma after only three weeks of exposure to asbestos. He also cited a report in which the Surgeon General of the United States had determined that "[e]xposures as short as a month may result in disease many years later." Report of the Surgeon General, Department of Health, Education, and Welfare, *Physician Advisory—Health Effects of Asbestos* (April 25, 1978). Dr. William Weiss, the appellants' medical witness, noted studies indicating that "a rather limited exposure (as little as one month) may result in disease many years later." Thus, all the medical testimony indicated that being exposed to asbestos for one month could result in a disease such as mesothelioma.

Mixon worked at the brewery for four months. One fellow worker testified that he and Mixon worked for at least one month in one room having a number of hot tie-ins. Several witnesses testified concerning the dust and insulation remnants accumulating on the floor during their work. In light of the medical testimony and the testimony of

Mixon's fellow workers, we conclude that Mixon's exposure was injurious in that it was "reasonably calculated to bring on the disease in question."

For the reasons stated, the award of the Industrial Commission is

*Affirmed.*