COURT OF APPEALS OF VIRGINIA


Present:   Judges Bumgardner, Humphreys and Clements
Argued at Salem, Virginia


RED BARON COAL COMPANY AND
 AMERICAN ZURICH INSURANCE COMPANY
                                              MEMORANDUM OPINION* BY
v.        Record No. 1882-02-3                JUDGE ROBERT J. HUMPHREYS
                                                  OCTOBER 21, 2003
HAROLD L. HESS


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Michael P. Del Bueno (Ralph L. Whitt, Jr.; Whitt & Associates, on
            briefs), for appellants.

            Gerald F. Sharp (Gerald F. Sharp, P.C., on brief), for appellee.


        Red Baron Coal Company and American Zurich Insurance Company (employer) appeal

an award by the Workers' Compensation Commission (commission) of compensation and

medical benefits for occupational hearing loss to Harold L. Hess (claimant).   On appeal,

employer contends the commission erred in finding (1) claimant's pre-existing hearing loss was a

compensable occupational disease, (2) claimant was injuriously exposed while working for

employer, and (3) claimant timely filed his claim for benefits.  For the reasons stated below, we

reverse the decision and award of the commission.

                                    I.  BACKGROUND

        The relevant evidence in this case is not in dispute.  Claimant worked in the coal mining

business for approximately twenty-nine years.  From 1978 to 1984, he worked for Three H Coal

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.  Further,
because this opinion has no precedential value, we recite only those facts essential to our
holding.

Company and from 1984 to 1994, he was employed by Middle Energy Coal Company. Claimant began working for employer in 1995. He testified that his work with employer was "similar to" and "as noisy" as his work at the other two mines. He further testified that, although he was consistently exposed to hazardous noise throughout his twenty-nine years of employment in coal mining, he did not wear hearing protection. Claimant last worked for employer on September 19, 2000.

On March 6, 2001, Dr. Jeffrey P. Robbins, claimant's physician, informed claimant that his loss of hearing was work related. Claimant filed a "Notice of Claim and Communication of Occupational Induced Hearing Loss" on March 19, 2001.

On or about August 2, 2001, employer propounded written questions to Dr. Robbins. Asked if "Harold Hess or anyone on his behalf ever advise[d him] that Harold Hess knew or believed as early as sometime in the 1980's that his hearing loss was caused by his work in the coal mines," Dr. Robbins responded, "Yes." At the hearing before the deputy commissioner, claimant testified he did not recall making that statement to Dr. Robbins. He testified he first noticed his hearing loss in the four or five years before he began treating with Dr. Robbins in March of 2001. He stated that when he first noticed the loss, he did not believe it was caused by his employment, but "figured it might have been old age, starting to get old."

The pertinent medical evidence in the case came from Dr. Robbins, who examined claimant, obtained a history from him, and conducted an audiometric test of his hearing. In his March 6, 2001 report, Dr. Robbins stated that claimant suffered from a "medically significant high and mid[-]frequency sensorineural hearing loss," of 53.7 decibels in his right ear and 47.5 decibels in his left ear. Noting that claimant had a "small conductive loss of 5-10 decibels" in his right ear that could not "be attributed to noise exposure and [was] more compatible with his

history of frequent ear infections[,]" Dr. Robbins concluded that claimant had a hearing loss of 47.5 decibels, in both ears, attributable to industrial noise exposure.

Dr. Robbins summarized his findings in his report as follows:

> Mr. Harold Hess is a non-working 51 year-old man whose only reported or suspected noise exposure has occurred as a direct consequence of thirty-five years of unprotected, underground coal mining noise exposure experienced in the employ of multiple different mining companies. The last five years of his employment was with Red Baron Coal Company. Based on this long history of industrial noise exposure, this gentleman has a medically significant high and mid frequency sensorineural hearing loss consistent and compatible with the damaging effects of noise exposure and characterized by an adjusted four frequency pure tone average of 47.5 decibels in both ears. Given the above historical information and findings on physical and audiologic exam, it is my best judgment and considered otologic opinion that this man's very considerable high and mid frequency hearing impairment has occurred as a direct consequence of thirty-five years of unprotected, underground coal mining noise exposure.

Dr. Robbins counseled claimant "to avoid or attenuate any predictable future noise exposure."

In its written questionnaire of August 2, 2001, employer also propounded the following questions to Dr. Robbins:

> Without a previous hearing test, can you say to a reasonable degree of medical probability that the sensorineural hearing loss you observed on or about March 6, 2001 were [sic] measurably worse than the hearing loss present before Harold Hess began working at Red Baron Coal Company approximately 5 years ago?
>
> If so, how much worse in each ear by average decibels lost in the four speech frequencies compared to before Harold Hess began working at Red Baron Coal Company?

Dr. Robbins' written response to the first question was "No." In response to the second question, he wrote:

> In my best judgment, the amount of hearing loss incurred during this man's employment with Red Baron Coal Co., was in all probability minimal to negligible. (Please see highlights on enclosure.) This man has a very significant noise induced hearing

loss, but I believe the responsibility for this loss rests overwhelmingly with his previous employers.

The attached enclosure was a portion of a 1999 article from the Journal of Occupational Hearing Loss entitled "Differential Diagnosis in Occupational Hearing Loss Claims." Dr. Robbins had underlined the following two passages in the article: "[Occupational hearing loss] is *never* progressive after a maximum loss is incurred approximately 10 to 12 years after initial exposure;" and, "It is generally accepted that after 10 or 15 years on the same job, a person's hearing loss *stabilizes and does not worsen* due to ongoing exposure to noise." (Emphases added).

By opinion dated December 7, 2001, the deputy commissioner denied claimant's claim for benefits, concluding claimant had failed to establish by clear and convincing evidence that he suffered a compensable hearing loss as a consequence of his employment with employer, as required by Code § 65.2-401. In reaching that conclusion, the deputy commissioner found that Dr. Robbins had opined that "claimant's hearing loss did not result from his exposure to noise while working for this employer."

By opinion dated June 25, 2002, the commission reversed the deputy commissioner's decision, holding that claimant proved an aggravation of his pre-existing occupational disease as a result of his underground noise exposure while working for employer and was thus entitled to benefits. In reaching that decision, the commission found that, in stating claimant's hearing loss while with employer was "minimal to negligible," Dr. Robbins had opined claimant suffered "some hearing loss, albeit nominal," as a consequence of his employment with employer. The commission also found that claimant's March 19, 2001 claim was timely filed because the diagnosis and communication of occupational hearing loss occurred on March 6, 2001, when Dr. Robbins examined claimant.

It is from the commission's opinion that employer now appeals.

## II. ANALYSIS

### A. Standard of Review

"On appeal, we view the evidence in the light most favorable to the party prevailing below." Tomes v. James City (County Of) Fire, 39 Va. App. 424, 429, 573 S.E.2d 312, 315 (2002). "If supported by credible evidence, the factual findings of the commission are binding on appeal." Id. at 430, 573 S.E.2d at 315 (citing Code § 65.2-706(A)). This is so "even though there is evidence in the record to support a contrary finding." Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986). "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991). However, "we review questions of law *de novo*." Rusty's Welding Serv. v. Gibson, 29 Va. App. 119, 127, 510 S.E.2d 255, 259 (1999) (*en banc*).

### B. Occupational Hearing Loss

Relying on Ashland Oil Co. v. Bean, 225 Va. 1, 300 S.E.2d 739 (1983), as standing for the proposition that an aggravation of an ordinary disease of life is not compensable, employer argues that, because hearing loss has been categorized by the legislature as an ordinary disease of life, the aggravation of claimant's pre-existing hearing loss while working for employer cannot be compensable, as a matter of law. Thus, employer contends, the commission erred in finding it so. We disagree.

Code § 65.2-400(A) defines an "occupational disease" as "a disease arising out of and in the course of employment, but not an ordinary disease of life to which the general public is exposed outside of the employment." The statute specifically provides that hearing loss is not an occupational disease, but a non-compensable ordinary disease of life. Code § 65.2-400(C).

Hearing loss, however, may be treated as a compensable occupational disease if there is "clear and convincing evidence . . . [t]hat the [hearing loss] exists and arose out of and in the course of employment[,] . . . did not result from causes outside of the employment," and "is characteristic of the employment and was caused by conditions peculiar to such employment."   Code § 65.2-401.

Although our Supreme Court held in Ashland Oil Co., 225 Va. at 3, 300 S.E.2d at 740, that a disability resulting from the aggravation of a pre-existing ordinary disease of life is not compensable, "the evidence in that case showed that the employee had a bunion before she began working and that her job merely aggravated the pre-existing condition."  Medlin v. County of Henrico Police, 34 Va. App. 396, 411, 542 S.E.2d 33, 41 (2001).  Thus, the Supreme Court held "it was not an occupational disease, and only disabilities resulting from occupational diseases are compensable."  Ashland Oil Co., 225 Va. at 3, 300 S.E.2d at 740.

Here, credible evidence shows that claimant began to notice his hearing loss four or five years before he began treating with Dr. Robbins in March of 2001.  It also shows that claimant's coal mining employment began in 1978.  Throughout the entire period of this employment, claimant was exposed to loud underground industrial noise.  Dr. Robbins found that claimant's 47.5-decibel hearing loss for both ears "occurred as a direct consequence of thirty-five years of unprotected, underground coal mining noise exposure."

Thus, the evidence in this case conclusively establishes that claimant's 47.5-decibel hearing loss arose out of and in the course of his coal mining employment and did not arise from causes outside of the employment.  Furthermore, loud industrial noise was a condition peculiar to claimant's underground coal mining work and his noise-induced hearing loss was a consequence characteristic of such employment.  Therefore, we find no error in the commission's conclusion

that the aggravation of claimant's hearing loss while working for employer was a compensable occupational disease.

## C. Injurious Exposure

Employer next contends claimant failed to prove by clear and convincing evidence that he suffered "injurious exposure" from industrial noise while working for employer. Employer argues that claimant's hearing loss did not measurably worsen after he began employment with employer. At most, employer argues, the amount of hearing loss incurred by claimant while working for employer was "minimal to negligible." We agree with employer that the evidence presented was insufficient to support the commission's finding that claimant's pre-existing hearing loss was aggravated during his employment with employer and, thus, that his last "injurious" exposure occurred while working there.[1]

Liability under the Workers' Compensation Act attaches to the employer claimant was last employed with when last injuriously exposed to the hazards of his occupational disease, "prior to [the] 'first communication of the diagnosis.'" Cooper v. Mary E. Coal Corp., 215 Va. 806, 809, 214 S.E.2d 162, 165 (1975). An exposure is deemed "injurious" if it is an exposure "to the causative hazard of such disease which is reasonably calculated to bring on the disease in question." Code § 65.2-404(B). In Caudle-Hyatt, Inc. v. Mixon, 220 Va. 495, 500, 260 S.E.2d 193, 195 (1979), our Supreme Court held that a claimant may prove injurious exposure "by establishing actual causation or aggravation of the disease or by showing that the exposure was

---

[1] We note, however, that employer's contention that claimant was required to prove injurious exposure by the clear and convincing evidence standard set forth in Code § 65.2-401 is in error. As stated above, claimant was required to prove by clear and convincing evidence the elements of Code § 65.2-401 in order to render his hearing loss, an otherwise ordinary disease of life, compensable as an "occupational disease." The burden then changed, requiring only that "claimant . . . establish by a preponderance of the evidence in whose employment he was last injuriously exposed." Blue Diamond Coal Co. v. Pannell, 203 Va. 49, 53, 122 S.E.2d 666, 669 (1961).

of such duration and intensity that it generally causes the disease in question, even though actual causation or aggravation cannot be established in the claimant's case."

Citing Caudle-Hyatt, Inc., the commission held that claimant established an "aggravation of the disease" because he proved "he suffered some hearing loss as a consequence of his employment with . . . employer." Thus, the commission concluded, claimant was entitled to compensation benefits "because he proved that his hearing deteriorated as a result of his noise exposure" while working for employer. We find no credible evidence in the record to support this finding.

The record here demonstrates that Dr. Robbins concluded that claimant's 47.5-decibel hearing loss "occurred as a direct consequence of thirty-five years of unprotected, underground coal mining noise exposure experienced in the employ of multiple different mining companies." Dr. Robbins also noted that, of those thirty-five years of employment in coal mines, claimant spent the last five working for employer. Further, in response to the written questionnaire propounded by employer, Dr. Robbins stated that "the amount of hearing loss incurred during [claimant's] employment with [employer] was in all probability minimal to negligible." However, Dr. Robbins explicitly qualified this statement by directing the reader to the attached journal article. Dr. Robbins highlighted two significant statements in that article. One statement expressed that "[occupational hearing loss] is *never* progressive after a maximum loss is incurred approximately 10 to 12 years after initial exposure." (Emphasis added). The other stated "[i]t is generally accepted that after 10 or 15 years on the same job, a person's hearing loss stabilizes and *does not worsen* due to ongoing exposure to noise." (Emphasis added). Moreover, Dr. Robbins answered "No," to the question asking whether he could opine, "to a reasonable degree of medical probability" that the hearing loss incurred by claimant while working with employer was

"measurably worse" than what claimant had sustained in the years prior to his work with employer.

Other than claimant's own testimony that his work environment with employer was "as noisy" as the work environments he had been exposed to in the past, as well as Dr. Robbins' advice to claimant to avoid future noise exposure, this is the sum total of the evidence supporting claimant's contention that his hearing loss was aggravated by his employment with employer.[2] However, none of this evidence proved, either directly or inferentially, that claimant sustained any additional hearing loss while working for employer. Indeed, although Dr. Robbins opined that claimant sustained what amounted to a "minimal or negligible" loss during that time, he specifically qualified this statement with an additional statement that hearing loss "does not worsen" after 10-15 years of initial exposure. He further stated he could not opine that claimant suffered any "measurable" hearing loss during that time. Thus, Dr. Robbins' opinion, when considered as a whole and in the context in which he rendered it, conclusively states that claimant suffered no measurable hearing loss as a result of working for employer.[3] Such evidence cannot support an award of benefits based upon a finding of aggravation, and thereby "injurious exposure," because it proves no actual aggravation.

---

[2] We find no evidentiary support in Dr. Robbins' advice to claimant to "avoid" future noise exposure. Indeed, the article submitted by Dr. Robbins definitively stated that occupational hearing loss "does not progress once the subject is removed from the noisy environment." Therefore it is mere prudence for a physician to counsel his patient to take such a precautionary measure. Such counsel, however, does not prove claimant continued to suffer injurious exposure to his hearing during his work with employer. In fact, Dr. Robbins' explicit statements tend to prove the contrary.

[3] Moreover, Dr. Robbins' testimony failed to establish any measurable aggravation that might arguably rise to a level of compensability pursuant to the commission's own guidelines. See Virginia Worker's Compensation Commission Rules and Regulations, Hearing Loss Table (setting guidelines for the determination of compensable levels of sustained hearing loss and relating actual "average decibel loss" to "percent of compensable hearing loss").

Accordingly, finding no credible evidence to support the commission's factual determinations that claimant's hearing loss was aggravated during his employ with employer and, thus, that his last injurious exposure to the "causative hazard of such disease" occurred during that time, we reverse the commission's decision and award, and dismiss.[4]

Reversed and dismissed.

---

[4] Because we find that the evidence failed to establish claimant's last injurious exposure occurred during his work with employer, we need not address employer's contention that claimant's claim for benefits was time barred. See Code § 65.2-404(A) ("When an employee has an occupational disease that is covered by this title, the employer in whose employment he was last injuriously exposed to the hazards of the disease and the employer's insurance carrier, if any, at the time of the exposure, shall alone be liable therefor, without right to contribution from any prior employer or insurance carrier.").

Clements, J., concurring, in part, and dissenting, in part.

I concur with the majority's holding that the commission did not err in concluding that the aggravation of claimant's hearing loss was a compensable occupational disease. However, I disagree with the majority's conclusion that the record is devoid of credible evidence from which the commission could have found that claimant "suffered some hearing loss as a consequence of his employment with . . . employer." Accordingly, I respectfully dissent from the majority's holding that claimant failed to prove he received his last injurious exposure while working for employer.

As noted by the majority, to receive workers' compensation benefits from employer, claimant had to establish by a preponderance of the evidence that "he was last injuriously exposed" while working for employer. Blue Diamond Coal Co. v. Pannell, 203 Va. 49, 53, 122 S.E.2d 666, 669 (1961); see Code § 65.2-404(A) ("When an employee has an occupational disease that is covered by this title, the employer in whose employment he was last injuriously exposed to the hazards of the disease . . . shall alone be liable therefor, without right to contribution from any prior employer . . . ."). By statutory definition, an "injurious exposure" to an occupational disease is "an exposure to the causative hazard of such disease which is reasonably calculated to bring on the disease in question." Code § 65.2-404(B). Injurious exposure may be proved by either "establishing actual causation or aggravation of the disease or . . . showing that the exposure was of such duration and intensity that it generally causes the disease in question, even though actual causation or aggravation cannot be established in the claimant's case." Caudle-Hyatt, Inc. v. Mixon, 220 Va. 495, 500, 260 S.E.2d 193, 195 (1979).

In this case, the commission determined that claimant was injuriously exposed while working for employer. In reaching that decision, the commission found as follows:

> The claimant did not present any evidence in the form of tests that
> compared his hearing ability before working at Red Baron with his

- 11 -

hearing ability after working there. However, Dr. Robbins wrote that the claimant's hearing loss at Red Baron was "minimal to negligible," thereby opining that the claimant had some hearing loss, albeit nominal, at Red Baron. Thus, the claimant proved an "aggravation of the disease" because he suffered some hearing loss as a consequence of his employment with this employer.

The commission's determination of whether a claimant was injuriously exposed while working for an employer is a finding of fact. See Piedmont Mfg. Co. v. East, 17 Va. App. 499, 510, 438 S.E.2d 769, 776 (1993). Under settled principles of appellate review,

> [t]he factual findings of the commission are conclusive and binding on appeal if supported by credible evidence in the record. "The fact that there is contrary evidence in the record is of no consequence if there is credible evidence to support the commission's findings." Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991). "This rule applies when an expert's opinion contains internal conflicts." Greif Companies/Genesco, Inc. v. Hensley, 22 Va. App. 546, 552, 471 S.E.2d 803, 806 (1996). "Likewise, the [c]ommission's conclusions upon conflicting inferences, legitimately drawn from proven facts, are equally binding on appeal." Watkins v. Halco Eng'g, Inc., 225 Va. 97, 101, 300 S.E.2d 761, 763 (1983). "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." Wagner Enters., Inc., 12 Va. App. at 894, 407 S.E.2d at 35.

Henrico County Sch. Bd. v. Etter, 36 Va. App. 437, 443-44, 552 S.E.2d 372, 375 (2001) (citation omitted). Applying these principles in Etter, we concluded that, "[a]lthough some of [the treating physician's] responses and statements . . . may arguably conflict with each other, the commission, as fact finder, was entitled to determine the weight, meaning, and credibility to give his respective responses and statements and to reconcile any possible conflicts therein." Id. at 445, 552 S.E.2d at 375.

Similarly, in this case, when viewed in the light most favorable to claimant, who prevailed before the commission, see Allen & Rocks, Inc. v. Briggs, 28 Va. App. 662, 672, 508 S.E.2d 335, 340 (1998), Dr. Robbins' responses and statements were arguably in conflict. In his

- 12 -

March 6, 2001 report, Dr. Robbins opined that the 47.5-decibel hearing loss suffered by claimant specifically "occurred as a direct consequence of thirty-five years of unprotected, underground coal mining noise exposure," the last five of which were spent working for employer. Dr. Robbins also indicated in that report that he counseled claimant "to avoid or attenuate any predictable future noise exposure." Then, in response to employer's August 2, 2001 written questionnaire, Dr. Robbins acknowledged that, without a pre-employment hearing test, he could not quantify a precise measurement for the worsening of claimant's hearing loss as a result of his employment with employer. He surmised, however, that "the amount of hearing loss incurred during [claimant's] employment with [employer] was in all probability minimal to negligible," adding that the responsibility for claimant's "very significant noise induced hearing loss . . . rest[ed] overwhelmingly with his previous employers." Dr. Robbins' questionnaire responses were accompanied by an article on occupational hearing loss in which the doctor had underlined two passages indicating that occupational hearing loss "is never progressive after a maximum loss is incurred approximately 10 to 12 years after initial exposure" and that it "is generally accepted that after 10 or 15 years on the same job, a person's hearing loss stabilizes and does not worsen due to ongoing exposure to noise."

In light of these arguably conflicting statements by Dr. Robbins, the commission was entitled to resolve the internal conflict in the expert evidence in favor of claimant and conclude, as it did, that Dr. Robbins' medical opinion was that, while claimant's industrially related hearing loss was primarily caused by his exposure to noise during his prior coal mining jobs, claimant suffered some hearing loss due to his employment with employer.

Credible evidence supports this finding. For instance, in stating that claimant's hearing loss was a "direct consequence" of claimant's exposure to industrial noise for thirty-five years, Dr. Robbins drew no distinction between the first thirty years and the last five years of claimant's

employment in underground mines. Rather, he indicated solely that claimant's hearing loss was due to the totality of his exposure to industrial noise over the entire thirty-five years of his employment in coal mining, including the last five years with employer. Additionally, in directing claimant to avoid exposure to industrial noise in the future, Dr. Robbins clearly believed that claimant's hearing loss had not fully stabilized at that point and could be made worse by further exposure. Otherwise, no such directive would have been necessary.

Moreover, while it is true that Dr. Robbins included in his response to the questionnaire an article stating it was "generally accepted" that occupational hearing loss did not worsen after "maximum" hearing loss was "incurred approximately 10 to 12 years after initial exposure," Dr. Robbins also expressed the opinion in his response that claimant incurred a "minimal to negligible" amount of hearing loss while working for employer. In my view, the commission could reasonably interpret that statement as reflecting the doctor's belief that claimant suffered some small, but undeniably positive, amount of hearing loss while working for employer. Cf. Etter, 36 Va. App. at 445-46, 552 S.E.2d at 375-76 (holding that the treating physician's testimony that the claimant's industrial accident contributed to the claimant's disability "to the minutest degree"—meaning "to some small degree"—was sufficient to prove the accident caused the claimant's disability). This view is buttressed by Dr. Robbins' additional statement that the responsibility for claimant's hearing loss rested "overwhelmingly" with claimant's previous employers. Because "overwhelmingly" falls short of "entirely," the commission could reasonably infer from the doctor's statement that he believed some of the responsibility for claimant's hearing rested with employer. The fact that Dr. Robbins believed the majority of claimant's hearing loss was incurred while claimant was working for earlier employers does not

negate the fact that claimant's condition was aggravated to some degree while working for employer.[5]

Thus, I believe that Dr. Robbins' medical records and opinions, coupled with claimant's uncontradicted testimony that his work with employer was similar to and as noisy as his previous coal mining jobs, constitute credible evidence to support the commission's factual determination that claimant was injuriously exposed to industrial noise while working for employer. Hence, I would conclude that we are bound by that finding on appeal.

Employer also asserts, on appeal, that claimant knew in the 1980s that his hearing loss was caused by working in coal mines. Therefore, employer maintains, claimant's claim of occupational hearing loss, filed March 19, 2001, was not filed within two years after receiving communication of the diagnosis of hearing loss in the 1980s, as required by Code § 65.2-406(A)(5), and is time barred. I disagree.

> As relevant to the facts of this case, Code § 65.2-406(A)(5) provides that the right to compensation for occupational diseases shall be forever barred unless a claim is filed within two years after a diagnosis of the disease is first communicated to the employee. Hence, "once an employee receives a communication of an occupational disease, it is incumbent upon him to file a claim" within two years of that communication.

Tomes v. James City (County of) Fire, 39 Va. App. 424, 430, 573 S.E.2d 312, 315 (2002) (quoting Parris v. Appalachian Power Co., 2 Va. App. 219, 225-26, 343 S.E.2d 455, 458-59 (1986) (footnote omitted)).

Here, employer's statute of limitations defense rests on Dr. Robbins' response to its questionnaire that he was told that claimant knew or believed as early as in the 1980s that his

---

[5] The majority appears to rule in a footnote that, to establish injurious exposure, a claimant must prove a certain level of "measurable aggravation" commensurate with the minimum level of compensability set forth in the commission's Hearing Loss Table. I find no basis in authority or logic for such a ruling in the context of determining in whose employment a claimant was last injuriously exposed.

hearing loss was caused by his work in the coal mines. In rejecting this argument, the commission accepted claimant's testimony that he did not recall making such a statement to Dr. Robbins and that he thought his hearing loss was caused by "old age," not by his work in the mines.

Because credible evidence supports the commission's factual finding that the first communication to claimant of the diagnosis of occupational hearing loss occurred on March 6, 2001, when Dr. Robbins examined him, I would hold the commission did not err in ruling that claimant's claim of March 19, 2001, was timely filed.

For these reasons, I would affirm the commission's decision and award.