COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Kelsey and McCullough
Argued at Salem, Virginia


GENA LAVONNE DAVIDSON SIFFORD AND
  HANNAH FAYTHE SIFFORD

                                                            OPINION BY
v.        Record No. 2002-10-3                    JUDGE ROBERT P. FRANK
                                                          OCTOBER 11, 2011
ANTHONY DALE SIFFORD,
  WILLIAM ISAAC SIFFORD, BARKER LEASING
  CORPORATION, INC. AND NATIONAL FIRE
  INSURANCE COMPANY OF PITTSBURGH/AIG
  DOMESTIC CLAIMS, INC./CHARTIS CLAIMS, INC.


                FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

                James J. O'Keeffe (Monica Taylor Monday; Thomas H. Miller,
                Guardian *ad litem* for the minor child; Gentry Locke Rakes &
                Moore, LLP, on brief), for appellants.

                (Adam S. Rafal; Vandeventer Black LLP, on brief), for appellee
                National Fire Insurance Company of Pittsburgh/AIG Domestic
                Claims, Inc./Chartis Claims, Inc.  Appellee National Fire Insurance
                Company of Pittsburgh/AIG Domestic Claims, Inc./Chartis
                Claims, Inc. submitting on brief.

                No brief or argument for appellees Anthony Dale Sifford, William
                Isaac Sifford and Barker Leasing Corporation. Inc.


        Gena Lavonne Davidson Sifford, wife, and Hannah Faythe Sifford,[1] collectively referred

to as appellant,[2] appeal the decision of the commission that found wife was not an "actual

---

        [1] Hannah Faythe Sifford and her adult brother, William Isaac Sifford, were awarded
death benefits by the commission.  These awards are not before this Court.

        [2] Appellee, National Fire Insurance Company of Pittsburgh/AIG Domestic Claims,
Inc./Chartis Claims, Inc., insurer, in its brief took no position on the merits.  No other appellee
filed a brief.

dependent" of Anthony Dale Sifford, deceased, under Code § 65.2-515(A)(1), and therefore was not entitled to death benefits under Code § 65.2-512. For the reasons stated, we agree with appellant that the commission committed reversible error.

FACTS

Anthony Sifford and Gena Sifford were married September 10, 1988. Two children were born of that union, William Isaac Sifford, born October 2, 1989 (now an adult) and Hannah Faythe Sifford (a minor), born August 13, 1996. During the marriage, the parties purchased a home that they shared as their marital residence.

During the marriage, Mr. Sifford worked full-time as a truck driver. Ms. Sifford worked part-time as a substitute teacher and gymnastics instructor, earning approximately $600 per month. She testified she was dependent on her husband's income. In January 2008, due to marital difficulties, the Siffords moved into separate bedrooms within their marital residence. Because of his job, Mr. Sifford would be away from home five or six days per week. When he was home he lived in the marital residence.

The couple entered into a written settlement agreement on May 5, 2008, which stated the parties' intent to resolve their respective rights and duties as to custody and support of the children, as well as support for each other. The agreement provided, *inter alia*:

1.  Vehicles – Ms. Sifford was to make note payments on her vehicle, but Mr. Sifford was to carry liability insurance on that vehicle until the debt was paid or Ms. Sifford left the marital home.

2.  Spousal support – Each spouse waived spousal support.

3.  Child support – Mr. Sifford was to pay no child support but was to pay "all expenses associated with the home and [] attempt to provide additional support for the minor child."

4.    Health insurance – Mr. Sifford agreed to carry health, dental, and optometric insurance on Ms. Sifford and the children as long as they remained insurable under his policy.

Ms. Sifford testified that Mr. Sifford paid the following expenses: house payment, health insurance, homeowner's insurance, life insurance (Ms. Sifford was the sole beneficiary of Mr. Sifford's policy), taxes, utilities, cable bill, and cell phone bill.[3] Ms. Sifford paid no rent to Mr. Sifford for her use of the basement quarters. Ms. Sifford testified she never reimbursed her husband for any of those payments.

At the time she executed the agreement, Ms. Sifford testified she could not survive on the $600 per month she earned from her part-time employment. Ms. Sifford testified she paid her car payment, one credit card obligation, some groceries, her uninsured medical expenses, and her own clothing. On September 15, 2008, Ms. Sifford began working 35 hours per week as a teacher's aide, earning $11,100 per year. Mr. Sifford died on September 24, 2008 in a work-related accident.

The parties shared a joint checking account into which the parties' paychecks were deposited. Ms. Sifford bought groceries, paid medical expenses for herself and Hannah, and paid for Hannah's clothing, all from that joint account.

Ms. Sifford's claim for death benefits was denied by the deputy commissioner. The full commission affirmed the deputy commissioner's opinion, concluding:

> In this case, the couple agreed that, in lieu of child support, Anthony Sifford would pay the household expenses. The wife agreed to remain in the marital home, separate and apart, in order to protect the minor child from disruption. There is no evidence that the husband paid any additional money to his wife or that her "station in life" required extra money from him.

---

[3] Mr. Sifford had paid these bills before and after the execution of the settlement agreement.

The evidence is that the couple reached a civil agreement to the benefit of their minor child. Now the child is entitled to benefits to replace Anthony Sifford's payment of household expenses. He paid the living expenses of the minor child and reached an agreement with Gena Sifford that she remain within the marital home to prevent any disruption in the child's life. The wife obtained a part-time job and has since obtained a better job. She is not earning what her husband earned, but this is not something we can consider.

This appeal follows.

## ANALYSIS

Appellant asserts the commission erred in determining Ms. Sifford was not entitled to death benefits under Code § 65.2-512. She argues she was "actually dependent" upon her husband at the time of his death, pursuant to Code § 65.2-515. The issue before us is whether appellant was "actually dependent" on Mr. Sifford.

Under Code § 65.2-512(A)(1), if death results from an accident covered by the Workers' Compensation Act, the decedent's employer must pay death benefits "to those persons presumed to be wholly dependent upon the deceased employee as set forth in subdivision A 1, A 2, and A 3 of § 65.2-515." Under Code § 65.2-515(A)(1), a wife is conclusively presumed to be dependent "upon a husband whom she had not voluntarily deserted or abandoned at the time of the accident[4] or with whom she lived at the time of his accident, if she is then actually dependent upon him."

To be "actually dependent" under the section, the wife "need only establish partial dependency." Caudle-Hyatt, Inc. v. Mixon, 220 Va. 495, 499, 260 S.E.2d 193, 195 (1979). However, she must prove that her husband "contributed with some degree of regularity, and such contributions must have been relied upon by the claimant for reasonable necessaries consistent

---

[4] No one contends Ms. Sifford voluntarily deserted or abandoned Mr. Sifford.

- 4 -

with . . . her station in life." Armada, Inc. v. Lucas, 2 Va. App. 414, 418, 345 S.E.2d 14, 16 (1986).

In Roanoke Belt, Inc. v. Mroczkowski, 20 Va. App. 60, 67, 455 S.E.2d 267, 271 (1995), we noted that "findings concerning the status of presumptive dependents are factual determinations." See Kelly v. Pendleton Constr. Co., 182 Va. 191, 194, 28 S.E.2d 621, 623 (1944). However, we further stated:

> [T]he principal issues raised by this appeal relate not to the factual findings of the commission, but to its application of the law to those findings. Accordingly, these issues are mixed questions of law and fact. Cf. Franklin Mortgage Corp. v. Walker, 6 Va. App. 108, 110, 367 S.E.2d 191, 192 (1988) (*en banc*) (finding that an injury arose out of and in the course of employment is a mixed question of law and fact). Accordingly, while we must defer to the factual findings of the commission with respect to Mrs. Mroczkowski's finances and work capacity, cf. id. at 110-11, 367 S.E.2d at 193, we review *de novo* the commission's application of the law to those findings in determining whether she was destitute.

Roanoke Belt, 20 Va. App. at 68, 455 S.E.2d at 271.

How much Mr. Sifford paid Ms. Sifford, whether he paid regularly or sporadically, and whether Ms. Sifford relied on that money are factual determinations. But having made those factual determinations, whether Ms. Sifford was actually dependent on Mr. Sifford, i.e. the application of the law to those facts, is a legal determination, subject to *de novo* review. Like Roanoke Belt, the instant appeal does not contest the commission's factual findings, but only the application of the law to those facts.

Here, the facts are not controverted. Indeed, the commission found that Mr. Sifford paid all household expenses, including but not limited to homeowner's insurance, the mortgage, utilities, and health insurance, that the parties owned a joint checking account which Ms. Sifford

- 5 -

used to pay groceries, and that Ms. Sifford lived in the marital residence rent free.[5] The ultimate determination, under these facts, of whether Ms. Sifford was "actually dependent" on Mr. Sifford remains a legal determination.

In Mixon, 220 Va. 495, 260 S.E.2d 193, the Supreme Court of Virginia found the decedent's wife to be "actually dependent," and therefore entitled to death benefits. Mr. and Mrs. Mixon had purchased a home together and commingled their funds. Ms. Mixon had been employed as a teacher for 30 years but testified, "I could certainly have continued to live on what we (Mrs. Mixon and her child) made but I think what [her husband] brought in helped us live a little bit above that." Id. at 497, 260 S.E.2d at 194. Under those facts, the Supreme Court of Virginia held "that the conclusive presumption of Code § 65.1-66 (now Code § 65.2-515) arises once actual dependency, even though only partial, has been established." Id. at 499, 260 S.E.2d at 195.

The Mixon Court defined dependency under what is now Code § 65.2-515 as meaning that "the claimant looked to and relied on the contributions of the employee, "'in whole or in part, as a means of support and maintenance in accordance with his or her social position and accustomed mode of life."'" Id. (quoting Miller & Long Co. v. Frye, 215 Va. 591, 594, 212 S.E.2d 258, 260 (1975) (quoting Glassco v. Glassco, 195 Va. 239, 242, 77 S.E.2d 843, 845 (1953))). The Court concluded:

> The evidence in this case establishes that Lucille Mixon and her husband had both contributed funds towards the purchase of a new home, that they had commingled their funds, and that her husband's salary enabled them to "live a little bit above" the standard of living otherwise attainable. This evidence sufficiently demonstrates that, in actuality, she was at least partially dependent

---

[5] The commission's findings that Mr. Sifford paid Ms. Sifford no additional money beyond the payments listed above or that Ms. Sifford's "station in life" required no extra money from Mr. Sifford does not address whether Ms. Sifford was "actually dependent" on Mr. Sifford. Whether or not Ms. Sifford received additional money is irrelevant when the uncontroverted evidence indicates Ms. Sifford received regular support from Mr. Sifford.

> upon her husband. Consequently, under the language of Code
> § 65.1-66, she is conclusively presumed to be wholly dependent
> upon him.

Id.

It is clear from Mixon that one need not be destitute or wholly dependent on the decedent to be "actually dependent."

In Armada, this Court provided insight as to when the surviving spouse was not "actually" dependent upon her deceased husband. The contrast in facts between Armada and the present case is significant.

Mr. and Ms. Lucas had been separated prior to his death. Ms. Lucas moved in with her father after the separation. During the 46 months from their separation until Mr. Lucas' death, he made no monthly or other regular payments to Ms. Lucas. Her evidence of dependency was that Mr. Lucas would give her money when she needed it, but she was unable to quantify the amount; he occasionally paid her auto repair bills and took her to lunch from time to time. We concluded Ms. Lucas failed to establish "she relied on the decedent's contributions as a means of support in accordance with her accustomed life style." Armada, 2 Va. App. at 418, 345 S.E.2d at 16. We noted:

> The few instances where Mr. Lucas gave Mrs. Lucas money
> occurred when she asked him for it. Mr. Lucas made no
> contributions with any degree of regularity, upon which
> Mrs. Lucas could have relied. She was employed full time and
> assisted in the support of her father. We hold that there was no
> credible evidence upon which the commission could have relied in
> finding that Mrs. Lucas was actually dependent upon her husband.

Id. at 418-19, 345 S.E.2d at 17.

Here, in the present case, the commission erred in focusing on the purpose of the settlement agreement, rather than the effect of that agreement. The commission concluded the agreement was to benefit the child. We do not dispute that finding. However, the effect of the

agreement was to provide regular support for Ms. Sifford as well. Clearly, Ms. Sifford was a beneficiary of that agreement, and as Commissioner Diamond indicated in the dissent, the majority did not assess Ms. Sifford's dependency.

The uncontroverted evidence in this case supports Ms. Sifford's claim for death benefits. She relied upon her husband to maintain her accustomed standard of living. She lived in the marital home rent-free. Mr. Sifford paid all household expenses, including the mortgage, utilities, and cable bill. He also paid all taxes.[6] Mr. Sifford carried health, dental, and optometric insurance on both Ms. Sifford and the children. Mr. Sifford also paid for the insurance on Ms. Sifford's car and paid her cell phone bills. Ms. Sifford did not and was not expected to reimburse Mr. Sifford for any of these expenditures. The parties commingled their earnings into a joint checking account. Finally, Ms. Sifford testified she could not survive on her part-time earnings. This overwhelming, uncontroverted evidence clearly demonstrates that Ms. Sifford relied on Mr. Sifford for her reasonable necessaries. See Armada, 2 Va. App. at 418, 345 S.E.2d at 16.

Further, the commission's factual findings did not refute any of the facts. The fact that Ms. Sifford waived spousal support is of no moment in light of the fact that Mr. Sifford continued to support both his wife and their minor daughter. Whether a spouse voluntarily has agreed to forfeit spousal support is a matter that is legally distinct from the question of whether the spouse is actually dependent under Code § 65.2-512. The spouse's eligibility for benefits under Code § 65.2-512 hinges on the application of the statutory criteria, not a separate and unrelated agreement by the parties. This conclusion is bolstered by the remedial nature of the

---

[6] It should be noted that Mr. Sifford paid all of these expenses prior to and after the execution of the settlement agreement.

workers' compensation statute.  See, e.g., Corporate Res. Mgmt. v. Southers, 51 Va. App. 118, 126, 655 S.E.2d 34, 38 (2008) (en banc).

Court-ordered spousal support is only one means of support and is not the exclusive means.  Support is simply "sustenance and maintenance, esp., articles such as food or clothing that allow one to live in the degree of comfort to which one is accustomed."  Black's Law Dictionary 1577 (9th ed. 2009).  It is further defined as "one or more monetary payments to a current or former family member for the purpose of helping the recipient maintain an acceptable standard of living."  Id. at 1578.  Spousal support, or alimony, is "a court-ordered allowance that one spouse pays to the other spouse for maintenance and support while they are separated, while they are involved in a matrimonial lawsuit, or after they are divorced."  Id. at 85.

The evidence is uncontroverted that Mr. Sifford supported his wife on a regular basis and that she relied on that support for reasonable necessaries.  Ms. Sifford was actually dependent upon Mr. Sifford at the time of his death.

CONCLUSION

The commission erred in finding Ms. Sifford was not actually dependent on Mr. Sifford and was therefore not entitled to death benefits after Mr. Sifford's death.  We therefore reverse the commission's decision as it pertains to Ms. Sifford and remand for the commission to award Ms. Sifford death benefits.

Reversed and remanded.